# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FERNANDO GARCIA-RODRIGUEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:11CR382-1 |
| | ) | 1:13CV442 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 27) (hereinafter "Section 2255 Motion").[1] For the reasons that follow, the Court should deny Petitioner's Section 2255 Motion.

## INTRODUCTION

This Court (per United States District Catherine C. Eagles) entered a Judgment against Petitioner imposing, inter alia, a prison term of 57 months, upon his guilty plea to unlawful presence in the United States following deportation after conviction for an aggravated felony in violation of 8 U.S.C. § 1326(a) and (b)(2). (Docket Entry 13; see also Docket Entry 1 (Indictment); Docket Entry 11 (Plea Agreement); Docket Entry dated Jan. 13, 2012

---

[1] Parenthetical citations refer to Petitioner's criminal case.

(documenting guilty plea); Docket Entry dated June 7, 2012 (documenting sentencing); Docket Entry 19 (Plea Hrg. Tr.); Docket Entry 20 (Sent'g Hrg. Tr.).) The United States Court of Appeals for the Fourth Circuit affirmed. United States v. Garcia-Rodriquez, No. 12-4472, 2013 WL 935791 (4th Cir. Mar. 12, 2013) (unpublished). Petitioner thereafter timely filed his instant Section 2255 Motion (Docket Entry 27), along with a supporting memorandum (Docket Entry 28). The United States responded (Docket Entry 32) and Petitioner replied (Docket Entry 34).

DISCUSSION

Petitioner's Section 2255 Motion nominally asserts four grounds for relief (i.e., "Ineffective Assistance of Counsel" (Docket Entry 27, ¶ 12(A)), "Court's Abuse of Discretion" (id., ¶ 12(B)), "Unconstitutional Sentence" (id., ¶ 12(C)), and "Illegal Sentence" (id., ¶ 12(D))), but all four grounds concern the same basic contention, i.e., Petitioner's counsel and the Court should have recognized that, pursuant to U.S.S.G. § 4A1.2(e)(1) & (3), Petitioner's prior burglary convictions should not have received criminal history points under U.S.S.G. § 4A1.1, such that he would have fallen in Criminal History Category I (rather than IV) and therefore would have faced an advisory sentencing range of 37 to 46 months (rather than 57 to 71 months) (see Docket Entry 27, ¶ 12(A)-(D); Docket Entry 28 at 1-15). That contention lacks merit and thus Petitioner's Section 2255 Motion fails as a matter of law.

2

The Indictment in this case charged that, "[o]n or about October 23, 2011, . . . [while] an alien who had previously been deported and removed from the United States . . . subsequent to conviction for the commission of an aggravated felony, [Petitioner] was found in the United States . . . having not obtained the consent of the [proper official], to reapply for admission into the United States." (Docket Entry 1 at 1.) The Factual Basis filed in support of Petitioner's guilty plea (which he and his counsel signed (Docket Entry 10 at 3)) states, inter alia, as follows:

> On February 5, 1991, [Petitioner] was convicted in the Los Angeles County Superior Court, for the offense Second Degree Residential Burglary in violation of California Penal Code Section 459, and was sentenced to one hundred-eighty days confinement with thirty six months probation.
>
> On September 2, 1992, [Petitioner] was convicted in the Los Angeles County Superior Court, for the offense of First Degree Residential Burglary in violation of California Penal Code Section 459, and was sentenced to two years confinement.
>
> On October 12, 1993, [Petitioner] was served Immigration form I-221, Order of Show Cause Order.
>
> On October 18, 1993, [Petitioner] was ordered deported by an immigration judge in San Diego, California.
>
> On October 19, 1993, [Petitioner's] form I-205, Warrant of Removal/Deportation was executed upon him and he was removed from the United States to the country of Mexico at the Otay Mesa port of entry, California. On his warrant was placed his signature and fingerprint. He was given his Warning to Alien Order Removed or Deported.
>
> On August 5, 1997, [Petitioner] illegally attempted to reenter the United States at or near Falfurrias, Texas,

3

and was voluntarily returned to Mexico by the Border Patrol.

On October 23, 2011, [Petitioner] was found in the Chatham County Jail, Pittsboro, North Carolina.

(Id. at 1-2.)[2]

As Petitioner correctly has recited, his Presentence Report ("PSR") placed him in a Criminal History Category IV, based on the assignment of three criminal history points each for his above-referenced 1991 and 1992 burglary convictions. (See Docket Entry 28 at 2-15; see also Docket Entry 36, ¶¶ 23, 24, 27.) Further, the United States properly has noted that Petitioner's PSR documented (as part of "The Offense Conduct" summary) that "in his interview with a probation officer [Petitioner] admitted that he had returned to the United States 'in 2002 or 2003, and ha[d] resided in North Carolina since that time.' He also admitted to the same probation officer that he had been employed as a cook at the Cheesecake Factory in Durham, North Carolina from 2005 to 2010." (Docket Entry 32 at 4 (internal citations omitted) (citing Docket Entry 36, ¶¶ 6, 44); see also Docket Entry 36, ¶¶ 35 ("[Petitioner] admitted

---

[2] At Petitioner's guilty plea (where he and his counsel both confirmed that an interpreter had read the Factual Basis to Petitioner), neither Petitioner nor his counsel objected to the information contained in the Factual Basis, despite having the opportunity to do so. (See Docket Entry 19 at 27.) As Petitioner has observed, the Factual Basis did contain a scrivener's error (corrected in the Presentence Report), in that "the conviction of Feb. 5, 1991 was for a burglary of a vehicle not of a residence." (Docket Entry 28 at 5 (internal citation omitted); see also Docket Entry 36, ¶ 23 (properly noting vehicular burglary conviction).)

4

he returned to the United States in 2002 or 2003. . . . He noted that he came to North Carolina because his brother-in-law resided in the area. [Petitioner] advised that he was married to [his wife] in 2005/2006, in Orange County, NC."), 37 ("[Petitioner] was residing . . . [in] Chapel Hill, NC, at the time of his arrest [on October 23, 2011]. He advised he had resided in th[at] residence, . . . that he and his wife owned, for nine years.").)

At his sentencing hearing, Petitioner acknowledged that "somebody read [his PSR] to [him] in Spanish," that he "had time to talk to [his] lawyer about it," and that he "underst[oo]d the report[.]" (Docket Entry 20 at 3.) Petitioner's counsel then confirmed that Petitioner did not object to anything in the PSR. (Id.) As a result, the Court (per Judge Eagles) "adopt[ed] the [PSR] without any change, and as to all factual matters in the [PSR] . . . adopt[ed] them as findings of fact, calculating [Petitioner's] . . . total offense level [a]s 21 . . . [and his] criminal history category [a]s IV." (Id.; see also id. ("The guideline range is 57 to 71 months.").)

Petitioner's counsel thereafter argued for a variance from the advisory Guideline range, emphasizing that:

1) Petitioner "has support . . . [and] has family . . . liv[ing] in the Middle District" (id. at 4);

2) "Congress may have contemplated with regards to immediate family in this type offense . . . [that a defendant's] immediate

5

family or siblings would be in Mexico, but [in Petitioner's case] they're here . . . [and] [t]hat's why he's back here" (id. at 4-5);

3) "[Petitioner] came back here in 2003 to support -- to make a living to support his family" (id. at 5; see also id. ("[H]e's here for illegal re-entry, not for burglary, not for drugs, not for anything else, but the purpose of supporting his family . . . ."));

4) "[t]he [PSR] says that's all he's pretty much done -- made a pretty good living, pretty productive living trying to support his family, but for that big felony 20 years ago" (id.); and

5) "36 months [in prison would satisfy] . . . what [Petitioner] owes the United States for punishment [and] as a deterrence, [in light of] other [18 U.S.C. §] 3553 factors" (id.).

The United States then "concur[red] with the probation officer's recommendation [of a sentence in] the middle of the guidelines [range of] 57 to 71 months." (Id. at 6.) Next, when given his opportunity to allocute, Petitioner stated: "I apologize for having come back, but I came back to take care of my family and to look for a better living. I would like to get back to Mexico just as soon as I can and not to come back. I recognize my guilt. May God bless you and I will respect your decision." (Id. at 7.)

The Court thereafter imposed sentence as follows:

> The Court will find, taking the guidelines into account on an advisory basis, and considering all the factors set forth by Congress in Section 3553(a), that the guidelines do take into account the information relevant to sentencing in this case, and give that information

6

appropriate weight so that a sentence within the guideline range is appropriate.

I considered the suggestion that a sentence in the middle of the guidelines might be appropriate, but both his felonies are really old, and since that time he's only had the one misdemeanor, which of course is a serious issue. I assume nobody was hurt, but it's not in the report, but still, it is not like he's somebody who's had conviction after conviction after conviction, so I think a sentence at the lower end of the guidelines is appropriate. I've considered [Petitioner's] argument for a sentence below the guideline range, but will -- however old they are, he does have these two very serious felonies, and they do need to be taken into account.

So, I think a sentence at the bottom of the guideline range is appropriate, and for that reason, will sentence him to 57 months in the custody of the Bureau of Prisons.

(Id. at 7-8.)

According to Petitioner, "[that] sentence was improperly calculated, [because] the sentences for the prior [state burglary] offenses were imposed over 15 [years] ago [and he was] discharged from [the] sentenced term of imprisonment and probation or parole for those offenses more than 15 years ago." (Docket Entry 28 at 4-5 (setting forth argument as to "Ineffective Assistance of Counsel" claim); see also id. at 6-7 ("[Petitioner's] prior [state burglary] sentences were not imposed within fifteen [] years of [his] commencement of the instant offense. . . . [F]or felony second degree burglary of a vehicle, he was sentenced on 02-05-1991 to 180 days of jail and 36 months of summary probation. . . . [W]hen he committed the new [burglary] offense and was arrested on [those] charges, the probation became obsolete . . . . [Petitioner] was

7

arrested on 05-31-1992 for [the] felony First Degree Residential Burglary, and he was sentenced to 2 years in prison. . . . [H]e earned good credit time for good behavior 224 days and was released earlier, and was deported on 10-19-1993. . . . Under U.S.S.G. [§] 4A1.2(e)(3) th[os]e sentences shall not be counted, because [they] are outside the applicable time period to be counted. . . . Counsel['s] unproffessionalism [sic] [in failing to object to the PSR's assignment of criminal history points for those prior burglary convictions] deprived [Petitioner] of a substantive procedural right, or deprived him of a favorable downward adjustment and failed to prevent an improper upward adjustment in [Petitioner's] sentence under the U.S.S.G."), 9 (stating, as to "Abuse of Discretion" claim: "The [C]ourt was wrong to impose a sentence of 57 months based in [sic] PSR prepared by the United States Probation Office that was improperly calculated, the total of 6 [criminal history] points were in excess, and should not had [sic] have been counted, [because] the prior sentences were outside the applicable time period to be counted, the 6 points that were added are void under U.S.S.G. [§] 4A1.2(e), which state [sic] the applicable time period for a sentence to be counted."), 11 (offering, as basis for "Illegal Sentence" claim: "The sentence imposed by the [C]ourt is illegal an [sic] unreasonable and shall be corrected, because the [C]ourt adopted a PSR THAT WAS improperly calculated . . . . The sentence violates the definition of

8

[countable prior convictions under Section] 4A1.2(e)(3) . . . ."), 12 (asserting, in connection with "Unconstitutional Sentence" claim: "The Court imposed an unconstitutional sentence . . . [because] counsel failed to identify error in the improperly calculated guidelines range in the PSR. . . . [C]ounsel did not call [sic] [Section] 4A1.2(e)(3) to object to the overstated 6 points in the PSR, points that should not have had been counted to increase [Petitioner's] criminal history category to IV.").)

As the United States has well-explained:

> [Petitioner's Section 2255 Motion] is completely without merit. U.S.S.G. § 4A1.1(a) requires three points to be added in determining a defendant's criminal history category "for each prior sentence of imprisonment exceeding one year and one month." His 1991 and 1992 convictions both satisfy this requirement, and he does not argue otherwise in his motion. A prior sentence also only counts if it "was imposed within fifteen years of the defendant's commencement of the instant offense" or "resulted in the defendant being incarcerated during any part of such fifteen-year period." U.S.S.G. § 4A1.2(e)(1). The commentary to this section explains that "the term 'commencement of the instant offense' includes any relevant conduct." Id. cmt. n.8 (citing U.S.S.G. § 1B1.3(a)(1)). Section 1326(a) applies to an alien who has been deported and "is at any time found in, the United States." 8 U.S.C. § 1326(a)(1). The Fourth Circuit has determined that "[a]bundant case law holds that the 'relevant conduct' of being 'found in' the United States commences on the date that the defendant illegally reenters the country and continues until he or she is discovered by immigration authorities." United States v. Hernandez-Frias, 475 Fed. Appx. 488, 491-9[2]) (4th Cir. 2012) (unpublished) (citations omitted).

> Although [Petitioner] seems to argue that he was not "found in" the United States by immigration authorities until October 23, 2011, when he was located in the Chatham County Detention Center, in his interview with a

9

probation officer he admitted that he had returned to the United States "in 2002 or 2003, and has resided in North Carolina since that time." He also admitted to the same probation officer that he had been employed as a cook at the Cheesecake Factory in Durham, North Carolina from 2005 to 2010.

[Petitioner] was sentenced in Los Angeles Superior Court for second degree burglary of a vehicle on February 5, 1991, and received 36 months probation. On September 10, 1992, his probation was revoked, and he was sentenced to 16 months imprisonment. . . . Under U.S.S.G. § 4A1.2(k)(1), a sentence for revocation of probation is added to the original term of imprisonment for the purpose of computing criminal history points. This conviction therefore was punishable by a sentence of imprisonment exceeding one year and one month and was properly assigned three points under U.S.S.G. § 4A1.1(a). Since this sentence was originally imposed on February 5, 1991, and [Petitioner] admitted he had illegally returned to the United States "in 2002 or 2003", eleven to twelve years after the sentence was imposed, the fifteen-year requirement in § 4A1.2(e)(1) was satisfied.

[Petitioner] also received three criminal history points for a September 2, 1992, conviction in Los Angeles Superior Court for first degree residential burglary. This conviction resulted in a sentence of two years imprisonment, satisfying the requirement of imprisonment for more than one year and one month in § 4A1.1(a). Because [Petitioner], by his own admission, illegally entered the United States in 2002 or 2003, this conviction was less than fifteen years old at the "commencement of the instant offense" and also qualified under § 4A1.2(e)(1). . . .

. . . [Petitioner] cannot show prejudice, as required [by Strickland v. Washington, 466 U.S. 668, 687-94 (1984), to make out his ineffective assistance claim], for it would have been futile for [his counsel] to object to the inclusion of these criminal history points . . . [and, [g]iven [Petitioner's] admission that he illegally returned to the United States "in 2002 or 2003," the [] [C]ourt did not err by adopting the sentencing range recommended in the [PSR] and imposed a sentence that was correct in every respect.

(Docket Entry 32 at 4-7 (internal ellipses and parenthetical citations omitted); see also Docket Entry 32-1 at 3 (documenting sworn statement of Petitioner's counsel that: "[P]etitioner is taking a narrow or restrictive view of his instant offense underlying his latest conviction, that the date of October 23, 2011 is his starting point. Whereas since he had been in the United States illegally since 2002/2003, in my opinion the commencement of the instant offense began on 2002/2003.").)[3]

---

[3] To the extent Petitioner asserts that his counsel provided ineffective assistance by failing to seek a downward departure under U.S.S.G. § 4A1.3(b) for overstated criminal history based on the age of his burglary convictions (see Docket Entry 28 at 9), he cannot show prejudice (as required by Strickland), in light of the Court's clear statement (quoted above) that the Guidelines properly accounted for the circumstances of this case, as well as the Court's explicit refusal (again, quoted above) to vary from the advisory sentencing range based on the age of those convictions. Similarly, if Petitioner seeks relief premised on the contention that he lacked knowledge of his right to object to matters in the PSR and/or an adequate opportunity to review the PSR (see Docket Entry 28 at 12), the record (once more, as quoted above) refutes his position. Finally, in his Reply, Petitioner complains that his counsel acted ineffectively by allowing Petitioner to admit during his presentence interview that he re-entered the United States in 2002 or 2003. (See Docket Entry 34 at 4.) Any such claim fails for at least three reasons. First, Petitioner possessed no constitutional right to counsel at his presentence interview and thus cannot claim ineffective assistance related to that interview. See United States v. MacDonald, 966 F.2d 854, 859 n.9 (4th Cir. 1992) ("[W]here no Sixth Amendment right to counsel attaches to the proceeding, an ineffective assistance claim cannot be sustained."); United States v. Hicks, 948 F.2d 877, 885 (4th Cir. 1991) ("[The defendant's] Sixth Amendment right to counsel has not been violated. There is no such right at a routine presentence interview . . . ."). Second, an attorney does not act ineffectively by advising a defendant "to answer all questions truthfully during [an] interview with the probation officer. . . .
(continued...)

11

CONCLUSION

Petitioner has established no basis for relief.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Docket Entry 27) be denied without issuance of a certificate of appealability.

                                         /s/ L. Patrick Auld
                                             **L. Patrick Auld**
                                **United States Magistrate Judge**

March 24, 2015

---

[3](...continued)
[S]uch advice is obviously strategic in the hopes of obtaining a reduction for acceptance of responsibility." United States v. Evans, No. 93-8816, 37 F.3d 631 (table), 1994 WL 558986, at *1 n.** (5th Cir. Sept. 22, 1994) (unpublished). In this case, a wealth of avenues existed to prove Petitioner re-entered the United States long before his arrest in 2011. For example, the United States could have subpoenaed Petitioner's family members and/or obtained records related to his employment, marriage, or dwelling. If, in the face of such evidence of his long-standing presence in the United States, Petitioner had sought to maintain an objection to a finding that his instant offense conduct commenced within 15 years of the imposition of his burglary convictions or his release from custody for such convictions, he would have gained nothing, but would have risked losing credit for acceptance of responsibility. See U.S.S.G. § 3E1.1, cmt. n.1(A) ("[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility."). Third (as, yet again, quoted above) the record reflects that Petitioner's admission of long-term residence in the United States formed a part of the narrative his counsel crafted in the hopes of obtaining a downward variance, i.e., that Petitioner returned to the United States to be with and to help support his family and that he productively lived here for nearly a decade without any further involvement in criminal activity. Although the Court denied a variance, Petitioner cannot overcome the "'strong presumption' that [his] counsel's strategy and tactics f[e]ll 'within the wide range of reasonable professional assistance.'" United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) (quoting Strickland, 466 U.S. at 689).